**KECK, Guardianship of In Re.**

Ohio Appeals, Second District, Franklin County.

No. 3743.   Decided October 9, 1944.

L. P. Henderson, Columbus, for appellant.
Arthur L. Rowe, Columbus, for appellee.

(SHERICK, J., of the Fifth Appellate District, sitting by designation in place of BARNES, P. J.)

## OPINION

By HORNBECK, J.

This is an appeal from an order of the Probate Court overruling the application of the ward to terminate his guardianship.   Five errors are assigned.

At the outset we are required to determine the type of appeal upon which this matter may proceed in this Court. The notice of appeal is noted as upon questions of law and fact. At the time of oral presentation neither party was insistent that the appeal should or should not proceed as noted. We indicated a purpose to take the appeal on law and fact inasmuch as no objection was interposed to such consideration. However, when we examine the files it appears that no bond was filed in the trial court and this is a prerequisite of an appeal on questions of law and fact. Then, too, the transcript of testimony has been settled and allowed by the trial judge as a bill of exceptions and counsel for appellant presents assignments of error and treats as such in his brief. In the situation thus presented we may only consider this appeal as upon law.

Although five errors are assigned the determinative one is whether or not the order is against the manifest weight of the evidence.

Upon the question of the weight of the evidence this record presents an unusual situation.

Evidently, the alienists predicated much of their testimony upon examinations made at a time some months prior to the hearing in question and one and probably both of the defense doctors must have testified at the time of the appointment of the guardian of the ward. Neither made any examination of him for the hearing on the application to remove the guardian and based their opinions upon observance of the ward during his testimony and upon purported family history, school records and their knowledge secured by examinations prior to the guardianship. This results in a very incomplete and meager record and much of the factual information upon which the doctors predicated their opinions is not available to this Court. Likewise the trial Judge had information gained from the prior hearing which was not adduced in the hearing now on review.

This record resolves itself largely into a conflict between the opinions of practical business men of the very highest standing and the theoretical testimony of medical experts predicated upon family history, personal observation, school record and I. Q. tests. From these radically different viewpoints the respective witnesses testified that the ward is well qualified to manage his own estate and on the other hand that he has the mind of a fourteen year old boy.

Frankly, if the question was one for this Court in the first instance we would be disposed to accept the opinion of the lay witnesses as to the ability of the ward to meet the demands of modern business. We, also, are impressed, as was the trial Judge, with the clarity, intelligence and correctness of the answers of the ward both upon direct and cross-examination. He manifested an appreciation of the subjecct matter concerning which he was testifying and although his lack of schooling was noticeable in some of his language, it did not, in the least, affect the intelligence and incisiveness of his answers. The only mental weakness that he manifested was in his inability to compute interest on two sums which were given to him, one merely upon mental computation and the other with the assistance of pencil and paper. This, in itself, in view of the fact that the young man was on the witness stand under stress, testifying in the presence of the trial Judge and three alienists as well as counsel, is not suprising and is not convincing that he might not have been able to determine the correct answers had the computation been made under more favorable circumstances.

It likewise is unusual that this young man apparently without any influence other than his own ability could bring to the stand in his behalf, Mr. Preston, in charge of production and tooling of the Dennison Engineering Company, Mr. Richert, Superintendent of the Banner Die, Tool & Stamping Company and Mr. Armstrong, foreman of Curtiss-Wright, all of whom from observation of the young man in his work and otherwise, in their plants testified that he was in their judgment qualified to handle his estate of about $8000.00. Nor are we impressed that the young man's proposed investments, a farm and a garage, indicated any weakness of intellect or lack of business acumen. There may be a difference of opinion on these tyles of investments but certainly it can be urged with much conviction that they are safe and desirable investments.

The experts, including the doctor produced by the appellant, concluded that his mental age was fourteen years, but there is no proof in the record as to many of the facts upon which they predicate their conclusions. For instance, counsel for appellee in interrogating the experts assumed that the ward had several relatives in institutions for mental defectives. No substantiation of this family history appears. Likewise, the record of the grades of the ward while in common schools was made the basis of inquiry touching his intelligence but the record is silent to establish that these assumptions were

correct and if so, there is no explanation as to circumstances surrounding the young man's schooling. In the situation presented in this record, to draw any controlling conclusion as to the ward's mental capacity as to his scholastic attainments is not warranted.

However, notwithstanding the manifest inadequacy of the record to support the opinions of the doctors, the controlling factor in our judgment is the conclusion of the trial judge when he passed upon the application of the ward. At page 79 of the record, the trial judge made this observation:

"Now, when he (the ward) took the witness stand, I was rather surprised at the clearness with which he answered the questions and the accuracy with which he answered questions; he shows a marked better reaction to questions than he did when we first came in contact with him * * * and also even a marked improvement over what he showed last year."

And further,

"Now, when you come to the purely intellectual worker, there is where the young man falls down. Even, in spite of that, if it weren't for one thing, of which I am positively conscious, I would be willing to terminate that young man's guardianship, and that is the parental influence, and I think it would be a pity if we would terminate this young man's guardianship and in a few months or a year find that this estate is gone and I feel that that is exactly what would happen."

It is obvious that but for the parental influence to which the Court refers the guardianship would have been raised but the record is silent upon this probative fact upon which the Court, in the main, grounded his action. There is no means afforded to the appellant to have the sufficiency of the facts upon which the Court reached his conclusion as to parental influence determined and it becomes clear that the Court acted upon information dehors the record.

In the situation presented by this record, we cannot affirm the judgment and hold that it must be reversed as being manifestly against the weight of the evidence as it comes to us.

GEIGER and SHERICK, JJ., concur.